# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### ***

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | Case No. 2:13–cv–1754–GMN–VCF |
| vs. | **ORDER** |
| BANK OF AMERICA, *et al.*, | |
| Defendants. | |

This matter involves the U.S. Equal Employment Opportunity Commission's civil enforcement action against Bank of America under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. Two motions are before the court: the Commission's Motion for a Protective Order (#38[1]) and Bank of America's Motion to Compel (#51). For the reasons stated below, the Commission's Motion for a Protective Order is denied and Bank of America's Motion to Compel is denied.

### BACKGROUND[2]

In 1998, Bank of America hired Melchora Lee to work as a cashier. (*See* Amend. Compl. (#39) at ¶ 15). In 1999, Lee was transferred to a new position where she began working as a Cash Services Representative. (*Id.*) This position required Lee to remove customer deposits from deposit bags, process the deposits, and ensure that all deposits were removed from the bag to prevent unprocessed deposits from being discarded in the trash. (*See* Lee Depo. (#51-2) at 134:9–19; 144:1–7). However, Lee allegedly failed

---

[1] Parenthetical citations refer to the court's docket.

[2] This is an interlocutory order, these facts are stated for background purposes only, and are not binding findings. *See City of Los Angeles, HarborDiv. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

to remove all of the deposits from the deposit bag. (*Id*. at 239:5–20). As a result, some customer's deposits were discarded in the trash.

In September of 2010, Bank of America terminated Lee's employment. (Amend. Compl. (#39) at ¶ 17). But, Lee was not a typical employee; she is deaf. (*Id*. at ¶ 13). Consequently, a dispute arose between Lee and Bank of America: was Lee terminated because she inadvertently discarded customer deposits in the trash or because Bank of America failed to make reasonable accommodations by, *inter alia*, communicating with Lee through American Sign Language?

On November 17, 2010, Lee filed an administrative charge against Bank of America with the U.S. Equal Employment Opportunity Commission. (Doc. #46 at 5:6–10). She alleged that she repeatedly requested an American-Sign-Language interpreter and that Bank of America denied her requests, harassed her, and ultimately terminated her employment because of her disability. (*Id*.) Under the Americans with Disabilities Act of 1990, the Equal Employment Opportunity Commission was required to investigate Lee's allegations and engage in good-faith conciliation efforts with Bank of America a condition precedent to filing suit. *See* 42 U.S.C. § 2000e-5(b).

On September 25, 2013, the Commission commenced this action on behalf of Lee. Bank of America answered and alleged, as an affirmative defense, that the Commission failed to conciliate as required by the statute. (Answer (#49) at ¶ 3). This, Bank of America asserts, deprives the court of subject-matter jurisdiction because it constitutes a failure to exhaust administrative remedies. (*Id*. at ¶ 3).

The parties are currently in the midst of discovery. Documents produced by the Commission state that the "best way" to communicate with Lee is by text message. (Doc. #51 at 2:2–4) (citing Pelliconi Aff.). This statement conflicts with the gravamen of the Commission's complaint, which alleges that Lee can only communicate through American Sign Language. Two discovery disputes resulted.

2

First, on October 9, 2014, the Commission filed the instant Motion for a Protective Order. It asks the court to preclude Bank of America from taking the Commission's Rule 30(b)(6) deposition. Two topics are disputed: whether Bank of America may inquire into the Commission's conciliation efforts and whether Bank of America may inquire into "[t]he facts supporting the EEOC's allegations set forth in the Complaint" by clarifying factual information and ambiguities contained in the Commission's previously produced investigatory file.

Second, on November 7, 2014, Bank of America filed the instant Motion to Compel. It requests an order requiring the Lee to produce documents relating to Lee's ability to communicate in writing. Both motions are addressed below.

**DISCUSSION**

The parties' motions present two questions: (1) whether Bank of America may depose the Commission's Rule 30(b)(6) witness on matters including Bank of America's affirmative-defense that the Commission failed to conciliate and (2) whether Bank of America's subpoena, which requests information regarding Lee's ability to communicate by writing, is unduly burdensome. Before examining these questions, the court begins with a brief discussion of the Americans with Disabilities Act.

**I.**   <u>**Statutory Background**</u>

Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990 prohibit employment discrimination on the basis of race, color, religion, sex, national origin or disability. 42 U.S.C. §§ 2000e-2, 12112. While Congress has authorized individuals and the Equal Employment Opportunity Commission to bring suits to enforce these statutes when certain conditions are met, "[c]ooperation and voluntary compliance were selected as the preferred means for achieving th[e] goal" of equal employment opportunity. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). Toward that end, "Congress established an integrated, multistep enforcement procedure culminating in the

Commission's authority to bring a civil action in a federal court." *Occidental Life Ins. Co. v. Equal Emp't Opportunity Comm'n*, 432 U.S. 355, 359 (1977).

First, a charge of discrimination must be "filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission" alleging an "unlawful employment practice." 42 U.S.C. § 2000e-5(b).

Second, upon receipt of the charge, the Commission "shall serve a notice of the charge . . . on such employer" and "shall make an investigation thereof." *Id*.

Third, "[i]f the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id*.[3] "Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." *Id*. During the conciliation process, the Commission has "the responsibility of . . . settling disputes, if possible, in an informal, noncoercive fashion." *Occidental*, 432 U.S. at 367-68.

Fourth, only if "the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission" may the Commission file suit. 42 U.S.C. § 2000e-5(f)(1).

Although the Commission must engage in good-faith conciliation efforts as a condition precedent to filing suit, *see* 42 U.S.C. § 2000e-5(b), appellate courts are split on whether the statute provides an

---

[3] By contrast, "[i]f the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action." 42 U.S.C. § 2000e-5(b). An individual complainant may then file her own civil action. *Id*. § 2000e-5(f)(1).

implied failure-to-conciliate affirmative-defense and, consequently, whether an employer may obtain discovery regarding the Commission's investigation and conciliation efforts.[4]

## II.   Whether the ADA Provides an Implied Failure-to-Conciliate Affirmative-Defense

The first question the parties' motions present is whether Bank of America may depose the Commission's Rule 30(b)(6) witness on matters including Bank of America's affirmative-defense that the Commission failed to conciliate. The Commission offers five arguments in support of its Motion for a Protective order: (1) a Rule 30(b)(6) deposition would be unreasonably cumulative or duplicative of previously produced discovery, (Doc. #38 at 12:10); (2) the Commission cannot produce a Rule 30(b)(6) deponent because none of the Commission's employees were percipient witnesses, (*id*. at 13:13–17); (3) the deposition "will likely elicit" privileged information, (*id*. at 14:21–22; 17:4–8); (4) a defendant is not permitted to inquire into the Commission's pre-suit conduct, (*id*. at 20:15); and (5) the noticed depositions topics lack reasonable particularity. The Commission's arguments are unpersuasive.

First, the Commission argues that Bank of America should be prohibited from deposing the Commission because a Rule 30(b)(6) deposition would be "unreasonably cumulative or duplicative" of information produced in the Commission's investigatory file. (*See id*. at 12–13). This argument fails as a matter of law. Rule 26(b)(2)(C)(i) states that "the court must the frequency or extent of discovery" if "the

---

[4] The Second, Fourth, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuit Courts of Appeal held that the statute provides an implied failure-to-conciliate affirmative-defense. *See Equal Emp't Opportunity Comm'n v. CRST Van Expedited, Inc*., 679 F.3d 657 (8th Cir. 2012); *Equal Emp't Opportunity Comm'n v. Asplundh Tree Expert Co*., 340 F.3d 1256 (11th Cir. 2003); *Equal Emp't Opportunity Comm'n v. Johnson & Higgins, Inc*., 91 F.3d 1529 (2d Cir. 1996); *Equal Emp't Opportunity Comm'n v. Keco Indus., Inc*., 748 F.2d 1097 (6th Cir. 1984); *Equal Emp't Opportunity Comm'n v. Klingler Elec. Corp*., 636 F.2d 104 (5th Cir. 1981); *Equal Emp't Opportunity Comm'n v. Radiator Specialty Co*., 610 F.2d 178 (4th Cir. 1979); *Equal Emp't Opportunity Comm'n v. Zia Co*., 582 F.2d 527 (10th Cir. 1978).

However, the Seventh Circuit recently reached the opposite conclusion. *Equal Emp't Opportunity Comm'n v. Mach Mining, LLC*, 738 F.3d 171 (7th Cir. 2013). The Supreme Court granted *certiorari* and will hear oral arguments on January 15, 2015. *Mach Mining, LLC v. Equal Emp't Opportunity Comm'n*, 134 S. Ct. 2872 (2014). Additionally, the Ninth Circuit is currently considering this question in *Arizona v. Geo Group, Inc*., No. 13-16292 (9th Cir. 2014), but has not yet entered an opinion.

discovery sought is unreasonably cumulative or duplicative." On April 7, 2014, and May 15, 2014, the Commission produced all non-privileged information from Lee's investigatory file. (DeMarco Aff. (#38) at Ex. 9, ¶ 5). Bank of America subsequently noticed the Commission's Rule 30(b)(6) deposition in order to clarify factual ambiguities contained in the Commission's investigation file. (Doc. #38 at 6:12–13). This request is not "unreasonably cumulative or duplicative" because Bank of America does not seek information that has already been produced.

Second, the Commission argues that it cannot produce a Rule 30(b)(6) deponent because none of the Commission's employees were percipient witnesses. (*See* Doc. #38 at 13:13–17). This argument also fails as a matter of law. Rule 30(b)(6) depositions exist in order to obtain testimony whether or not there is a percipient witness. *See* FED. R. CIV. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available **to the organization**.") (emphasis added).

Third, the Commission argues that the deposition "will likely elicit" privileged information. (Doc. #38 at 14:21–22; 17:4–8). This argument is misplaced. None of Bank of America's noticed topics request privileged information. (*See id.* at 6–8). Accordingly, the Commission's invocation of the attorney-client privilege, work-product doctrine, and government deliberative-process privilege are premature because Bank of America has not yet attempted to elicit privileged information.

Additionally, the Commission's arguments regarding the attorney-client privilege, work-product doctrine, and government deliberative-process privilege are incorrect as a matter of law. Bank of America's deposition topics seek, *inter alia*, "facts supporting the EEOC's allegations set forth in the Complaint filed by the EEOC in this matter." (*Id.* at 17:6–8). The Commission argues that Bank of America's requests seek privileged information "[b]ecause the Complaint was drafted by EEOC counsel." (*Id.* at 17:10). Facts are never privileged. *See LightGuard Sys., Inc. v. Spot Devices, Inc*., 281 F.R.D. 593, 597 (D. Nev. 2012) (discussing the attorney-client privilege and work-product doctrine). The attorney-

client privilege protects confidential communications, not facts. *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Similarly, the work-product doctrine protects an attorney's thought processes and legal recommendations, not facts. *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

The Commission's argument that facts are undiscoverable because they support allegations in a complaint, which was drafted by an attorney, (*see* Doc. #38 at 17:6–8), is wrong. If facts support a complaint's allegations they are discoverable as a matter of law, *see* Fed. R. Civ. P. 26(b)(1), and the failure to produce those facts in response to a proper discovery request is sanctionable. *See* Fed. R. Civ. P. 37.[5]

Fourth, the Commission argues that Bank of America is not permitted to obtain discovery regarding the Commission's pre-suit conduct, including its investigation and statutorily required conciliation efforts. *See* 42 U.S.C. § 2000e-5(b); (Doc. #38 at 20:15). No controlling authority has determined whether the ADA provides an implied failure-to-conciliate affirmative-defense. The Second, Fourth, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuit Courts of Appeal held that the statute provides an implied failure-to-conciliate affirmative-defense, which permits employers to obtain discovery regarding the Commission's investigation and conciliation efforts. (*See supra* n. 4) (colleting cases). The Ninth Circuit and U.S. Supreme Court are in the process of deciding the question, but have not yet reached a decision. (*See id.*)

Given the procedural posture of this case, as well as the procedural posture of the Ninth Circuit and U.S. Supreme Court cases, this court is in the difficult position of having to guess what a higher court

---

[5] The Commission also argues that the deposition is a "veiled attempt" to get "the testimony of EEOC counsel who drafted" the complaint and various discovery responses. (Doc. #38 at 17: 15–16). The court encourages the Commission's counsel to refrain from needlessly imputing bad faith towards opposing counsel. Doing so detracts from the merits counsel's arguments, diminishes counsel's credibility, and risks jeopardizing their client's rights. *See Dunn v. Wal-Mart Stores, Inc.*, No. 2:12-cv-1660-GMN, 2013 WL 5940099, at *3–5 (D. Nev. Nov. 1, 2013) (Ferenbach, J.).

will decide. No matter what this court decides regarding the ADA and the implied failure-to-conciliate affirmative-defense, the Ninth Circuit or U.S. Supreme Court will likely enter a controlling order before judgment is entered in this matter. Consequently, the court will not decide whether the ADA creates an implied failure-to-conciliate affirmative-defense and, nonetheless, orders discovery as if the ADA does create the affirmative-defense. This decision is supported by three considerations.

First, with the exception of the Seventh Circuit, every appellate court that has decided the question concluded that the ADA provides for an implied failure-to-conciliate affirmative-defense. (*See supra* n. 4) (colleting cases).

Second, when in doubt, Rule 26(b)(1) strongly favors disclosure. Discovery is designed to be liberal. *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Its purpose is to "serve[] the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

Third, no matter what the Ninth Circuit or U.S. Supreme Court decide, it is more "just, speedy, and inexpensive," *see* FED. R CIV. P. 1, to proceed with discovery now. If the Ninth Circuit or U.S. Supreme Court decide that the ADA does not contain a failure-to-conciliate affirmative-defense, then the remedy is simple: the Commission may file a short motion *in limine* and exclude evidence regarding its conciliation efforts. If, however, this court does not permit discovery on the Commission's conciliation efforts, and the Ninth Circuit or U.S. Supreme Court later decide that the ADA does contain a failure-to-conciliate affirmative-defense, then the remedy is complex: discovery will be reopened and the parties may be required to redraft and resubmit dispositive motions. Therefore, the court disagrees with the Commission's argument that its pre-suit conduct is not discoverable.

This brings the court to the Commission's fifth and final argument in support of its Motion for a Protective Order: that the noticed depositions topics lack reasonable particularity. Generally, the party

noticing a Rule 30(b)(6) deposition "must take care to designate, with painstaking specificity, the particular subject areas that are to be covered." C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2103 at p. 458, n. 11 (3d. 2010) (citation omitted). Here, some of Bank of America's noticed topics appear facially overbroad. For instance, the first topic seeks a deponent regarding "[t]he facts supporting the EEOC's allegations set forth in the Complaint filed by the EEOC in this matter." (Doc. #38 at 6:5–6). Similarly, the third topic seeks a deponent for "[c]larification of factual information and ambiguities contained in the EEOC's investigative file in this matter." (*Id.* at 6:10–11).

Nonetheless, in the context of the Commission's six-page amended complaint, the court finds that Bank of America's topics do not lack reasonable particularity. The heart of the Commission's amended complaint contains six conclusory allegations. In sum, it alleges that (1) Lee is deaf, (*see* Amend. Compl. (#39) at ¶ 13); (2) Lee worked at Bank of America, (*id*. at ¶ 15); (3) Bank of America "engaged in unlawful employment practices," (*id*. at ¶ 14); (4) Lee's supervisors could not communicate with Lee in American Sign Language, (*id*. at ¶ 16–17); (5) Lee's supervisors failed to provide Lee with a reasonable accommodation, (*id*. at ¶ 18); and (6) Lee's performance suffered and her employed with Bank of America was terminated as a result of Bank of America's failure to provide reasonable accommodations, (*id*. at ¶ 19). These conclusory statements prompt the question: "What are the relevant facts?"

Therefore, the Commission's Motion for a Protective Order is denied.

### III. Whether Bank of America may Obtain Discovery on Lee's Ability to Communicate in Writing

The parties' filings present a second question: whether the court should grant Bank of America's Motion to Compel and require Lee to produce evidence regarding her ability to communicate in writing. The Commission argues that Bank of America's subpoena should be quashed because, *inter alia*, Bank of America's subpoena is unduly burdensome. (*See* Doc. #52 at 24). The court agrees. Before examining

Bank of America's subpoena, the court begins its analysis with the governing law.

### A.     *Relevant Law*

Federal Rule of Civil Procedure 26(b)(1) provides for broad and liberal discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Additionally, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id*. These rules permit parties to "fish" for evidence, provided the requesting party casts a "reasonably calculated" lure. *See* FED. R. CIV. P. 26(b), Advisory Comm. Notes (1946) (citation omitted) ("[T]he Rules . . . permit 'fishing' for evidence as they should."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

Discovery, however, has limits. Under Rule 26(b)(2)(C)(iii), "the court must limit the frequency or extent of discovery" if it determines that the "burden . . . of the proposed discovery outweighs its likely benefit." Additionally, Rule 26(c)(1) permits the court, in its discretion, to limit discovery in order "to protect a party or person from annoyance [or] embarrassment." These provisions are echoed by Rule 45(d)(1), which governs subpoenas and controls here. Rule 45(d)(1) states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

### B.     *Bank of America's Subpoena is Unduly Burdensome as a Matter of Law*

Bank of America's subpoena contains thirty-eight requests. The nature and scope of the subpoena is exemplified by the first two requests. They seek "[a]ll emails [Lee has] sent since April 27, 1998[6]" and

---

[6] Lee began working at Bank of America on April 27, 1998.

10

1
2
3
4
5
6

"[a]ll emails [Lee has] sent in response to an email [she] received since April 27, 1998." (*See* Doc. #52 at 5:21–22). The remaining thirty-six requests expand the subpoena's scope. For instance, Bank of America seeks "[a]ll documents related to or evidencing any written communication by [Lee] since April 27, 1998," including (1) all posts, messages, and comments Lee has made since April 27, 1998 on Twitter, LinkedIn, MySpace, Pinterest, Google Plus+, Tumblr, Yelp, Instagram and (2) every text message that Lee has sent or received since April 27, 1998. (*Id*. at 5–6).

7
8
9
10
11
12
13

There is no question that Lee's ability to communicate by writing is a central issue in this case. Similarly, there is no question that information regarding Lee's ability to communicate by writing is discoverable under Rule 26(b)(1). However, the Federal Rules of Civil Procedure do not countenance Bank of America's request. The subpoena seeks a complete audit of Lee's personal life, as reflected by written communications, from April 27, 1998 to the present. This is invasive and violates Rules 26(b)(2)(C)(iii), 26(c), and 45(d)(1). Bank of America's Motion to Compel is, therefore, denied.

14

ACCORDINGLY, and for good cause shown,

15
16

IT IS ORDERED that U.S. Equal Employment Opportunity Commission's Motion for a Protective Order (#38) is DENIED.

17

IT IS FURTHER ORDERED that Bank of America's Motion to Compel (#51) is DENIED.

18
19

IT IS FURTHER ORDERED that the parties' request for an oral argument is DENIED. *See* LR 78-2.

20

IT IS SO ORDERED.

21

DATED this 18th day of December, 2014.

22
23
24
25

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE